McFarland

*v.*

Moomaw *et al.*

(*Supreme Court of Appeals of Virginia, Sept. 19, 1895.*)

[22 S. E. Rep. 865.]

**Vendors' Liens—Priority—Construction of Contract—Case at Bar.**

Defendant being unable to pay plaintiff a balance due on the purchase of land, the latter agreed to extend the time of payment, provided T. paid a portion of the money due. It was agreed that T. was to be substituted to the lien of plaintiff, for the sum paid and any amount that he might thereafter pay, and that, when the whole was paid, plaintiff would deed to defendant and T. in proportion to the amounts paid by them: *held*, that T. became a purchaser of the land to the extent of his payments, and that plaintiff's lien for the balance of the purchase money should be first paid, and after that the sums paid by T.

Appeal from circuit court, Roanoke county; Henry E. Blair, Judge.

Bill by Sarah McFarland against B. F. Moomaw and others. From the decree rendered, plaintiff appeals. Reversed.

*Phlegar & Johnson,* for appellant.

*G. W. Hansbrough,* for appellees.

Keith, P., delivered the opinion of the court.

It appears from the record that in the year 1880 Sarah Mc-Farland sold to B. F. Moomaw a tract of land in the county of Roanoke for $10,000, payable in 10 years, the interest payable

annually, and in default of payment of interest or principal the land was to be surrendered to the vendor. In the year 1890 default was made in the payments, and the debt due to Mrs. McFarland was ascertained to be about $9,000. Moomaw desiring an extension of time, a new contract was entered into, bearing date April 1, 1890. This agreement is in the following words: "This agreement, made and entered into on the 1st day of April, 1890, between B. F. Moomaw, party of the first part, Charles B. Trout, Mrs. Sarah C. Trout, and Mrs. Mary F. Moomaw, parties of the second part, and Mrs. Sarah McFarland, party of the third part, witnesseth: That whereas, the party of the first part is due and owing to the party of the third part the purchase money for the hundred acres, more or less, on the south side of Roanoke river, in Roanoke county, which purchase money, with its interest, now amounts to about the sum of nine thousand dollars, and whereas, the party of the first part is unable at this time to pay the same, and the party of the third part is willing to extend the time upon the terms hereinafter stated: Now, therefore, it is agreed that in consideration of the sum of twelve hundred dollars, cash in hand, paid by the parties of the second part to the party of the third part, and the further sum of five hundred and ten dollars to be paid on the 1st day of August, 1890, and such other sums as the parties of the second part may hereafter pay for and on account of said debt at the request of the party of the first part, the parties of the second part shall be substituted to the lien of the party of the third part for all and each of said sums of money so paid or to be paid ; and, whenever the entire purchase money shall be paid to the party of the third part, then the party of the third part shall convey said tract of land to the parties of the first and second part, and they shall hold the same in proportion to the several amounts of money paid by them, respectively. And the party of the third part, in consideration of the prompt payment of the interest annually upon the purchase money on the first day of

August, does hereby agree to extend the time of the payment of the principal of said purchase money for five years from the 1st of August, 1890, but, should interest at any time remain unpaid for the period of three months after the first day of August, then the party of the third part shall have the right to have said land sold to satisfy the unpaid purchase money. And the parties of the first and second part agree that the said farm shall be managed and used in a good, farmlike manner ; that all buildings and fences shall be kept in good repair ; and that no waste of any kind shall be committed on said farm. Witness the following hands and seals, this, the day and year first above written : B. F. Moomaw, Jr., [Seal.] Chas. B. Trout, [Seal.] Sarah C. Trout, [Seal.] Mary F. Moomaw, [Seal.] Sarah McFarland. [Seal.]" Under this agreement the parties of the second part paid the sum of $1,200, and the further sum of $510 ; but Moomaw, the party of the first part, having paid the interest for the years 1891–92, made default in the payment of the interest for the year 1893. On the 2d of January, 1893, B. F. Moomaw, the original purchaser, and Mary F. Moomaw, Charles B. Trout, and Sarah C. Trout, named as parties of the second part in the contract of 1890, sold the land to Boliver S. Webb at the price of $21,000.

In December, 1893, Sarah McFarland filed a bill in which she made B. F. Moomaw, Mary F. Moomaw (his wife), Joel E. Moomaw, Mrs. Sarah Good, George W. Hansbrough, L. C. Hansbrough (as trustee, and as administrator of Mrs. Sarah C. Trout), Chas. B. Trout, and B. S. Webb parties defendant. Sarah Good, Charles B. Trout, and L. C. Hansbrough, administrator of Sarah C. Trout, filed their answers to said bill; and, upon the pleadings so made and exhibits filed, a decree was made, passing upon the rights of the parties. The papers in this cause appear to have been lost or mislaid, and cannot now be produced. It appears, however, that on the 6th day of January, 1894, a decree was entered construing

the agreement of April 1, 1890, which was filed as an exhibit with the bill; and the court being of opinion that the parties of the second part to the agreement were entitled to a lien upon the land mentioned in the bill, for the money paid by them under the said contract, superior to that of the complainant, Sarah McFarland, decreed that John E. Penn, who was appointed a commissioner for that purpose, should, unless the unpaid purchase money due on said land was paid within 30 days sell the same at public auction to the highest bidder, upon the terms set out in said decree, and from the proceeds of the sale, after paying costs of suit and sale, he was directed to pay to Charles B. Trout, or to G. W. Hansbrough, his attorney, the sum of $500, and L. C. Hansbrough, administrator of Sarah C. Trout, the sum of $1,200, with interest on both of said sums from April 1, 1890, until paid; and to Mrs. Sarah McFarland, the sum of $7,300, with interest from April 1, 1890, subject to a credit of $438 paid August 1, 1891, and $438 paid August 1, 1892,—directing him to report his proceedings to the court. At a subsequent day Sarah McFarland filed a petition praying that this decree might be reheard. To this petition L. C. Hansbrough, as administrator of Sarah C. Trout, deceased, and Charles B. Trout in his own right, filed their ·joint demurrer and answer; and the cause coming on to be further heard before the judge of the circuit court of Roanoke county, in vacation, on the 26th day of July, 1894, it was ordered that the prayer of the petition for the rehearing of the decree entered at the January term, 1894, should be denied ; and, after making some modifications of that decree which do not affect the questions now presented for our consideration, the petition was dismissed. From this decree, Sarah McFarland obtained an appeal from one of the judges of this court.

The sole question to be considered is whether or not Charles B. Trout and Sarah C. Trout acquired liens superior to that of Mrs. McFarland upon the land sold by her to B. F. Moomaw.

About the facts of the case there seems to be no controversy. It is not disputed that on the 1st day of April, 1890, B. F. Moomaw owed upon the purchase made by him from Mrs. McFarland about the sum of $9,000, that he was unable to pay it, and that she was pressing for the money. The contract of April, 1890, was thereupon entered into, which, after stating the amount due, the inability of Moomaw to pay the same and the willingness of Mrs. McFarland to extend the time upon the terms set out in the agreement, provided that the sum of $1,200 in cash should be paid by the parties of the second part to Mrs. McFarland, and that the further sum of $510 should be paid on the 1st day of August, 1890, and that for these and such other sums as the party of the second part might thereafter pay, for and on account of said debt, to Mrs. McFarland, at the request of the party of the first part, the contract provided that the parties of the second part, to wit, Charles B. Trout, Sarah C. Trout, and Mary F. Moomaw, should be substituted to the lien of Mrs. McFarland, and that, whenever the entire purchase money should be paid to Mrs. McFarland, she should convey the said tract of land to R. F. Moomaw, the original purchaser, and the Trouts and Mary F. Moomaw, in the proportion of the several amounts of money paid by them, respectively. Now, the contention of the appellees is that by virtue of this arrangement the parties advancing the money for B. F. Moomaw acquired a lien upon this land superior to that of Mrs. McFarland. If this had been the object, all that would have been necessary was that Mrs. McFarland should assign to those advancing the money her lien, as against Moomaw. It was unnecessary that Moomaw should have been a party to the transaction at all. The effect, however, of the provision to which we have just adverted, is to make the parties of the second part purchasers of the land in proportion to the amounts of money paid by them, and upon the payment of the whole purchase money they became entitled to a conveyance. We are therefore of opinion that the lien for the unpaid purchase

money due Mrs. McFarland by B. F. Moomaw upon the purchase of the land in the bill mentioned is unaffected, as to its priority, by anything contained in the contract dated April 1, 1890 ; and we are further of opinion that there is due her, as vendor, for the unpaid purchase money, the sum of $7,300, with interest from the 1st of April, 1890, subject to a credit of $438 as of August 1, 1891, and to a like sum as of August 1, 1892, and that Charles B. Trout has a lien for the sum of $500, and L. C. Hansbrough, administrator of Sarah C. Trout, a lien for the sum of $1,200, with interest on both of said last-mentioned sums from the 1st of April, 1890, until paid. The two liens last mentioned are, between themselves, of equal dignity, but are both subordinate to the lien of Mrs. McFarland. We are therefore of opinion that the decree of the circuit court is erroneous, and that the same must be reversed and annulled.